FILED

1  Robert L. Starr (State Bar No. 18305)
2  e-mail: starresq@hotmail.com
   **THE LAW OFFICE OF ROBERT L. STARR**
3  23277 Ventura Boulevard
   Woodland Hills, California, 91364-1002
4  Telephone: (818) 225-9040
   Facsimile: (818) 225-9042
5
6  [additional attorneys for Plaintiff on the signature page]

7  Attorneys for Plaintiff, NADIA KAS

8

11 FEB -2  PM 2: 46

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

9                    UNITED STATES DISTRICT COURT
10
11        CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

CV11  1032  VBF  PJWx

12  NADIA KAS, individually, and on        Case Number:
13  behalf of a class of similarly situated
    individuals,
14
                                            **CLASS ACTION COMPLAINT**
15          Plaintiff,                       **FOR:**
16
17       v.                                  **(1)   Violations of California**
                                             **Consumer Legal Remedies Act**
18  MERCEDES-BENZ USA, LLC,
                                             **(2)   Violations of Unfair Business**
19          Defendant.                       **Practices Act – Secret**
                                             **Warranty**
20
21                                           **(3)   Violations of Unfair Business**
                                             **Practices Act**
22
23                                           **(4)   Breach of Implied Warranty**
                                             **pursuant to Song-Beverly**
24                                           **Consumer Warranty Act**
25                                           **JURY TRIAL DEMANDED**
26
27
28
    Case No.:

                        CLASS ACTION COMPLAINT

1

## INTRODUCTION

2      1.      Plaintiff NADIA KAS ("Plaintiff") brings this action for herself and

3  on behalf of all similarly situated persons ("Class Members") who purchased or

4  leased certain defective model year 2004 or earlier Mercedes-Benz C-Class

5  (W203) and CLK Class (W209) vehicles ("Class Vehicles") sold by defendant

6  Mercedes-Benz USA, LLC ("Defendant" or "MBUSA").

7      2.      Defendant designed, manufactured, distributed, sold, and leased the

8  Class Vehicles to Plaintiff and Class Members.

9      3.      Plaintiff is informed and believes and based thereon alleges that as

10  early as 2000, if not before, Defendant knew or should have known that the Class

11  Vehicles contain one or more design and/or manufacturing defects, including but

12  not limited to defects in their radiators that leads to a breakdown of the internal

13  components of the radiator causing coolant (*i.e.*, glycol) to contaminate the

14  automatic transmission fluid and transmission system itself ("Radiator Defect").

15      4.      The Class Vehicles' radiators are uniformly and inherently defective

16  in materials, design, and workmanship because the Radiator Defect will inevitably

17  cause extensive damage to the Class Vehicles by damaging the drivetrain and

18  requiring replacement of the transmission, torque converter, and radiator.

19      5.      As a result of the Radiator Defect, the Class Vehicles experience

20  premature breakdowns and mechanical failures, including but not limited to loss

21  of forward propulsion, acceleration surging, significant delays in acceleration,

22  stalling, and the inability to use the transmission gears.

23      6.      These conditions present a safety hazard because of sudden and

24  unexpected breakdowns and mechanical failures that Class Vehicles can

25  experience while in operation.  Thus, the Class Vehicles and their transmissions

26  (among other things) can fail, suddenly and unexpectedly, at any time and under

27  any driving condition or speed, thereby contributing to traffic accidents, which can

28  result in personal injury or death.

1        7.     In addition to the safety hazards, the costs of the Radiator Defect to
2    consumers can be exorbitant because consumers will be required to pay hundreds,
3    if not thousands, of dollars both to diagnose and repair the Radiator Defect and to
4    repair the extensive damage that it causes to a vehicle's drivetrain, as well as
5    damage that often requires replacement of the transmission, torque converter, and
6    radiator.

7        8.     Plaintiff is informed and believes and based thereon alleges that
8    Defendant knew or should have known that the Class Vehicles are defective and
9    not fit for their intended purpose of providing consumers with safe and reliable
10    transportation. Nevertheless, Defendant has actively concealed and failed to
11    disclose this defect from Plaintiff and the Class Members at the time of purchase
12    or lease and thereafter.

13        9.     Plaintiff is informed and believes and based thereon alleges that as
14    the number of consumer complaints about the Radiator Defect increased, in 2005,
15    Defendant issued a secret technical service bulletin ("TSB") to only its dealers in
16    which it acknowledged the Radiator Defect and attempted to identify one of the
17    design and/or manufacturing defects contained in the Class Vehicles.

18        10.    The TSB was intended to address customer complaints and symptoms
19    of humming/bussing noises or noticeable harsh engagement during gentle
20    acceleration between engine speeds of 1200-2500 RPM.

21        11.    To remedy this, the TSB instructs dealers to implement cheaper,
22    albeit temporary, fixes: namely, software upgrades and performing a "glycol test"
23    to confirm glycol contamination by testing the transmission fluid. Based on the
24    results of the glycol test, the TSB instructs either to "clean and flush the
25    transmission with the torque converter and transmission lines," then based on the
26    result of this, either to "not perform any repair," "replace radiator," and/or
27    "replace torque converter."

28

1    12.    The 2005 TSB directs MBUSA dealers to perform the software

2    upgrade, glycol test, and subsequent transmission cleaning/flushing and radiator

3    and/or torque converter replacements at no cost to consumers under warranty.

4    13.    However, Plaintiff is informed and believes and based thereon alleges

5    that Defendant's clandestine, free software upgrade, glycol test, and subsequent

6    transmission flushing and cleaning and radiator and/or torque converter

7    replacement TSB programs are strictly limited to the most persistent customers

8    and only those who make a repair visits to its dealerships and complain loudly

9    enough about the problem, regardless of whether or not their vehicles are covered

10   under MBUSA's 4-year/50,000-mile express warranty.[1]

11   14.    Plaintiff is also informed and believes and based thereon alleges that

12   to mollify those consumers who complain loudly enough, Defendant implemented

13   another clandestine program to secretly reimburse or pay for repair costs of those

14   Class Vehicles that suffer from the Radiator Defect and the related damage it

15   causes (*i.e.*, replacements of damaged transmissions and/or control modules,

16   filters etc.), even when the Radiator Defect and the related damage that it causes

17   occurs outside of the vehicle's 4-year/50,000-mile express warranty period.

18   15.    As with its secret TSB program, including the cost-free temporary

19   fixes, Defendant's secret repair and/or reimbursement program for the Radiator

20   Defect and the related damage it causes is also strictly limited to the most

21   persistent customers who complain loudly enough.

22   16.    For example, Defendant refused to provide Plaintiff and prospective

23   Class Members with any of the temporary repairs or cost-free replacements for

24   damage that occurred as a result of Radiator Defect, while it has replaced

25

26   [1] Indeed, MBUSA does not typically pay for cleaning and flushing of the
     transmission fluid under its New Car Warranty (or any other warranty).

27   MBUSA's manuals consider the cleaning and flushing of the transmission fluid
     to be a maintenance item.  Again, this maintenance item is not included as part of

28   the warranty coverage.

1  transmissions, control modules, transmission fluids and filters, radiators, and/or
2  torque converters of other consumers who noisily and continuously persisted and
3  demanded free replacements for Radiator-Defect-related damage.

4      17.    Upon information and belief, Plaintiff alleges that if Defendant's
5  secret, temporary fixes, including flushing the transmission fluid, is successful, the
6  effect only lasts long enough to ensure that the manifestation of the Radiator
7  Defect occurs outside of the warranty period, but it will not permanently remedy
8  the Radiator Defect. This ultimately leaves consumers with defective vehicles that
9  are substantially certain to again experience the Radiator Defect, the consequent
10  damage caused by the Radiator Defect, and the associated safety hazards.

11      18.    Plaintiff is also informed and believes and based thereon alleges that
12  Defendant is aware that flushing the transmission does not fix the Radiator Defect.
13  Rather, this simply prolongs the amount of time that will elapse before the
14  Radiator Defect again manifests itself, thus helping ensure that the Radiator
15  Defect occurs outside of the warranty period so that Defendant can easily and
16  unfairly shift financial responsibility for the Radiator Defect to Class Members.

17      19.    Plaintiff is informed and believes and based thereon alleges that
18  despite notice of the defect from numerous consumer complaints and dealership
19  repair orders, Defendant has not recalled the Class Vehicles to repair the defect,
20  has not offered its customers a suitable repair or replacement free of charge, and
21  has not offered to reimburse the Class Vehicles' owners and leaseholders the costs
22  they incurred relating to diagnosing and repairing the Radiator Defect and the
23  related damage, including but not limited to replacing the radiator, transmission
24  and/or torque converter.

25      20.    Defendant knew and concealed the defects that are contained in every
26  Class Vehicle, along with the attendant dangerous safety problems and associated
27  repair costs, from Plaintiff and Class Members, both at the time of sale and repair
28  and thereafter. Had Plaintiff and the Class Members known about these defects at

1    the time of sale or lease, Plaintiff and Class Members would not have purchased

2    the Class Vehicles or would have paid less for them. As a result of their reliance

3    on Defendant's omissions and/or misrepresentation, owners and/or lessees of the

4    Class Vehicles have suffered ascertainable loss of money, property, and/or value

5    of their Class Vehicles.

6         21.     Additionally, as a result of the Radiator Defect in the Class Vehicles,

7    Plaintiff and the Class Members have been harmed and have suffered actual

8    damages in that the Class Vehicles are experiencing continuous, progressive, and

9    repeated problems associated with the Radiator Defect and/or are substantially

10    certain to experience problems associated with the Radiator Defect before the

11    expected useful life of their Class Vehicles has run.

12                                **PARTIES**

13    **Plaintiff**:

14         22.     Plaintiff NADIA KAS is a California citizen who lives in Los

15    Angeles County, California. On January 9, 2004, Ms. Kas purchased a new 2004

16    Mercedes-Benz C240 from Mercedes-Benz of Beverly Hills, in Beverly Hills,

17    California. Ms. Kas purchased this vehicle primarily for her personal, family, or

18    household purposes. This vehicle was manufactured, sold, distributed, advertised,

19    marketed, and warranted by Defendant, and bears the Vehicle Identification No.

20    WDBRF61J74E017045.

21         23.     On or about July 19, 2010, with approximately 39,640 miles on her

22    vehicle's odometer, Ms. Kas noticed that there was an abnormal shifting of the

23    transmission, with the transmission shuttering and kicking back. As a result, Ms.

24    Kas brought her vehicle to a Mercedes-Benz authorized dealer, Mercedes-Benz of

25    Beverly Hills. The dealer test drove Ms. Kas vehicle and indicated that it was

26    unable to verify her concern but nevertheless replaced Ms. Kas' transmission fluid

27    and filter, charging her several hundred dollars to do so!

28

1     24.    On or about July 30, 2010, with approximately 39,903 miles on the

2    vehicle's odometer, Ms. Kas again brought her vehicle to Mercedes-Benz of

3    Beverly Hills, complaining about the same transmission problems that she had

4    complained about during her last visit. The dealer verified Ms. Kas' concerns and

5    "performed Glycol [sic] test on transmission fluid to test for contamination."[2]

6    After conducting the test, the dealer charged Ms. Kas over $900 to replace the

7    radiator and to flush the transmission fluid. However, this repair did not resolve

8    Ms. Kas's concerns because her vehicle continues to experience the symptoms of

9    the Radiator Defect described herein and was recently advised by the dealer that

10    she would have to pay several thousand dollars more to repair the Radiator Defect,

11    which includes the cost of replacing the transmission.

12     25.    At all times, Plaintiff, like all Class Members, has driven her vehicle

13    in a foreseeable manner and in the manner in which it was intended to be used.

14    Similarly, like other Class Members, Plaintiff has not received any of the available

15    free fixes outlined in Defendant's secret TSB.[3]

16    **Defendant**:

17     26.    Defendant MBUSA is a limited liability company organized and in

18    existence under the laws of the State of New Jersey and registered with the

19    California Department of Corporations to conduct business in California. At all

20    times mentioned herein, Defendant was engaged in the business of designing,

21    manufacturing, constructing, assembling, marketing, and selling automobiles and

22    other motor vehicles and motor vehicle components in Los Angeles County, and

23    throughout the United States of America.

24

25    [2] The dealer noted that "transmission oil cooler cracked leaking coolant into transmission."

26    [3] MBUSA's most recent TSB for this issue dates March 6, 2008. It

27    addresses the same vehicles and same problems in substantially the same manner as their first, 2005 TSB for this problem, as well as the March 24, 2006 technical

28    bulletin attached hereto as Exhibit 1.

1

## JURISDICTION

2     27.   This is a class action.

3     28.   Members of the proposed Plaintiff Class are citizens of California, a

4 state different from the home state of Defendant.

5     29.   On information and belief, the aggregate claims of individual Class

6 Members exceed $5,000,000, exclusive of interest and costs.

7     30.   Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

8

## VENUE

9     31.   Defendant, through its business of distributing, selling, and leasing its

10 Class Vehicles, has established sufficient contacts in this district such that it is

11 subject to personal jurisdiction here. Defendant is deemed to reside in this district

12 pursuant to 28 U.S.C. § 1391(a).

13     32.   In addition, a substantial part of the events or omissions giving rise to

14 these claims and a substantial portion of the property that is the subject of this

15 action are in this district. Plaintiff's counsel's Declaration, as required under

16 California Civil Code section 1780(d), which reflects that a substantial part of the

17 events or omissions giving rise to the claims alleged herein occurred, or a

18 substantial part of property that is the subject of this action, is situated in Los

19 Angeles County, California, is attached as Exhibit 2.

20     33.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

21

## APPLICABLE LAW

22     34.   California State law applies to all claims in this action.

23

## FACTUAL ALLEGATIONS

24     35.   For years, Defendant has designed, manufactured, distributed, sold,

25 and leased the Class Vehicles. Upon information and belief, it has sold, directly

26 or indirectly through dealers and other retail outlets, thousands, if not tens of

27 thousands, of Class Vehicles in California and nationwide.

28

1    36.    The Class Vehicles are defective, including but not limited to the
2    Radiator Defect. The Class Vehicles are defective because the Radiator Defect
3    can result in coolant contamination of the Class Vehicles' automatic transmission
4    fluid.

5    37.    The standard features offered by MBUSA in the Class Vehicles
6    varied based on, *inter alia*, Class Vehicle engine platforms. However, all Class
7    Vehicles contained a defective radiator manufactured and/or supplied by Valeo.

8    38.    The radiators in the Class Vehicles are used for cooling the engine
9    and drivetrain components. To cool down the engine, coolant heated from
10   flowing through the engine is fed into the header of the radiator via the inlet and
11   then cools down as it circulates through the tubes to the opposite header and cold
12   coolant exits back into the engine via the outlet, and the cycle is repeated. As it
13   circulates through the tubes, the coolant transfers its heat to the tubes which, in
14   turn, transfer the heat to the fins that are lodged between each row of tubes. The
15   fins then radiate the heat transferred by the tubes to the surrounding air, hence the
16   term radiator.

17   39.    In addition to engine coolant, the Class Vehicles also circulate
18   transmission fluid through the radiator. Like the engine, this process serves to
19   cool the transmission.

20   40.    The radiator contained in the Class Vehicles harbors a defect which
21   allows coolant from the radiator to mix with and contaminate the transmission
22   fluid, causing damage to the vehicle, including the transmission and torque
23   converter (*i.e.*, the Radiator Defect).

24   41.    A damaged transmission and/or torque converter can result in
25   dangerous condition to operator and/or other individuals on the road. For
26   instance, if plaintiff Kas's vehicle got stuck in a low gear on a highway, the
27   reduced speed of her vehicle when compared to other vehicles on the road would
28   certainly be a dangerous condition. Similarly, a vehicle that is unable to shift

1  gears poses a danger to the operator as they may be unable to avoid or react to a
2  dangerous road condition or another driver. This defect is substantially and
3  unreasonably dangerous because of the danger of hesitation and/or abrupt
4  movement or acceleration of the Class Vehicles suddenly or abruptly, thereby
5  contributing to traffic accidents, which can result in personal injury or death.

6      42.    Plaintiff is informed and believes and based thereon alleges that
7  Defendant acquired its knowledge of the Radiator Defect through sources not
8  available to Class Members, including pre-release testing data, early consumer
9  complaints about the Radiator Defect to Defendant and its dealers who are its
10  agents for vehicle repairs, testing conducted in response to those complaints,
11  aggregate data from Defendant's dealers, and from other internal sources.

12      43.    Hundreds, if not thousands, of purchasers and lessees of the Class
13  Vehicles have experienced the Radiator Defect and the associated safety risks and
14  hazards described herein. Indeed, customers have reported the Radiator Defect in
15  the Class Vehicles to Defendant directly and through its dealers. Defendant is
16  fully aware of the Radiator Defect in the Class Vehicles. Indeed, complaints
17  posted on the Internet demonstrate that the Radiator Defect is widespread and
18  dangerous. The complaints also reflect Defendant's awareness of the defective
19  condition (note that spelling and grammar mistakes remain as found in the original
20  postings):

21      ●    I have a 2003 CLK. It is in with my local dealership at the moment.
22           They are telling me that the gearbox has had it, because coolant from
23           the radiator has leaked in to it. They are telling me that I need to pay
24           around 5K to get this fixed.

25      ●    I have recently been advised by my Dealership that the "burring
26           noise" and "stuttered acceleration" I've experienced with my 2002
27           CLK 240 which has only done 47k miles, is down to "Glycol
28           contamination of the gearbox". HUH ? [¶] Without getting too

Case No.                                    Page 9

1                technical, I'm told that as the gearbox oil is being cooled, through the

2                bottom of the radiator, it appears that due to the design of the radiator

3                "Glycol" can seep into the oil which basically buggers up the

4                radiator, torque convertor and gearbox.  [¶]  Whilst the tech's at the

5                deralership are being very honest and helpful, no one has actually put

6                there hands up and admitted that this is a design fault which I as the

7                customer should not have to pay for.  [¶]  I'm waiting for MB's

8                Customer CareDept. to call back and wondered if anyone else

9                experienced this problem and how was it resloved ?

10     ●  Ive been having rough shifts in my coupe as well, I have a 03 320

11        with 39600 miles. [¶]  Shifting is harsh, especially from 2nd to 3rd

12        theres a jerk. [¶]  I would continue with the dealers till they resolve

13        this, I also had a tranny leak. let us know if theres any updates!

14     ●  Took my 2003 clk320 in for service. Found out there is radiator

15        coolant in transmission. They have mentioned to flush the

16        tramsmission or replace it.  [¶]  It is under warranty till dec. Would

17        like any information on this.  What should I do?

18     ●  For about 5 months I have been having problems with jerky shifting

19        in my transmission and I took it to 4 different MB mechanics and

20        none found a problem or could find a problem. Out of curiosity last

21        night, I came across this whole glycol contamination problem

22        through the search and my car (2003 C320 4matic) falls under every

23        single symptom of this problem: [¶]  I'm having the vibration of the

24        car in the first 2 gears. I have jerky transmission at gears 1-2 and

25        slightly less(but definitely still noticeable) at 2-3 and the annoying

26        thuds and clunks while downshifting. I just feel like I don't have

27        control over the car. Unfortunately I am out of warranty and too late

28        to purchase extended warranty.  [¶]

Case No.                            Page 10

1       Here is what I concluded needs to be done through searches:

2       -Replace the radiator with a Behr one

3       -Flush the cooling system, flush the radiator, flush the torque

4       converter and complete flush of the transmission multiple times to

5       make sure there is no glycol in there.

6       -Fresh new transmission fluid

7       . . . .

8    ◉   I have a 2003 C240 meticulously maintained, 43,000 miles, followed

9       all service requirements. Car was sold as never needing trans. fluid

10      and 15 yr. coolant life. In fact you can't even check trans. fluid

11      without special dipstick "tool." Radiator leaked coolant into trans.

12      and rad and trans have to be replaced. I am now facing a $6000-

13      $7000 repair bill because of faulty radiator which M/B knew about

14      when car was under warranty. [¶] I'm so upset I can't see straight.

15   ◉   I have a 2002 CL. I bought it used with 17,000 miles. It currently has

16      54,000 miles. [¶] The transmission fluid is cooled by the radiator.

17      This past Monday (10/18/10) the transmission burnt out. The

18      Mecedez dealer stated I need a new radiator, transmission and gear

19      box, ($7,100.00). I'm looking to see if there has been any class action

20      lawsuits filed for this design error. [¶] I've been on line and have

21      discovered the standard radiator "Valeo" will break down and allow

22      glycol to mix with the transmission fluid. I believe Mercedez should

23      be liable for the correct repair for this car.

24   ◉   I have read numerous accounts concerning the faulty Valeo radiator

25      that seeps an insidious contaminant, glycol, into the transmission of

26      the 2002-2003 built C class. My 2003 C240 has had numerous

27      problems with this. At 44,000 miles MB put in a new transmission

28      but did not replace the radiator!! Fortunately it was under the

extended warranty at the time. [¶] Now 30,000 miles later at 78,000 miles I had a glycol test performed and I had "LOTS" of glycol in my transmission. Unfortunately now my car is out of warranty!! MB dealership finally changed the radiator, torque converter and flushed the system..and the service advisor said "I would fix it and sell it"!! [¶] I was hoping to drive this car for another 10 years..it is in excellent shape!! However there is no guarantee that other parts of my tranny will give out! I've seen many posts concerning this issue and to my knowledge no class action suit has been pursued! If anyone has any information to the contrary, please let me know. I feel a class action suit should be filed because us consumers are getting a very raw deal!!

44.     Despite this, Defendant has actively concealed the existence and nature of the defect from Plaintiff and the Class Members at the time of purchase or lease and thereafter. Specifically, Defendant has:

a.      failed to disclose, at and after the time of purchase or lease and repair, any and all known material defects or material nonconformities of the Class Vehicles, including the Radiator Defect contained in the Class Vehicles;

b.      failed to disclose at the time of purchase or lease and repair that the Class Vehicles and their radiators were not in good working order, were defective and required modification and/or replacement, and were not fit for their intended purpose; and

c.      failed to disclose or actively concealed the fact that the Class Vehicles and their radiators were defective, despite the fact that Defendant learned of such defects through consumer

1                           complaints, as well as other internal sources, as early as 2000,

2                           if not before.

3        45.    Defendant has caused Plaintiff and Class Members to expend money

4  at its dealerships or other third-party facilities to diagnose the Radiator Defect,

5  clean and/or repair their vehicles, replace parts, and/or take other remedial

6  measures related to the Radiator Defect of the Class Vehicles, as well as to repair

7  or replace items damaged by the Radiator Defect, despite Defendant's knowledge

8  of the Radiator Defect.

9        46.    Defendant has not recalled the Class Vehicles to repair the Radiator

10  Defect, has not offered to its customers a suitable repair or replacement of parts

11  free of charge, has not offered to reimburse Class Vehicle owners and leaseholders

12  who incurred costs relating to repairs associated with the Radiator Defect, and has

13  not offered to reimburse Class Members any other cost associated with repairing

14  or addressing problems caused by the Radiator Defect.

15        47.    The Class Members have not received the value for which they

16  bargained when they purchased or leased the Class Vehicles.

17        48.    As a result of the Radiator Defect, the value of the Class Vehicles has

18  diminished, including without limitation their resale value.

19                **VIOLATION OF CALIFORNIA SECRET WARRANTY LAW**

20        49.    Defendant has violated, and continues to violate, California Civil

21  Code section 1795.90 *et seq.* (the "California Secret Warranty Law"). The

22  California Secret Warranty Law was enacted to abolish "secret" warranties. The

23  term "secret warranty" is used to describe the practice by which an automaker

24  establishes a policy to pay for repair of a defect without making the defect or the

25  policy known to the public at large. A secret warranty is usually created when the

26  automaker realizes that a large number of its customers are experiencing a defect

27  not covered by a factory warranty, and decides to offer warranty coverage to

28  individual customers only if, for example, the customer complains about the

1 │ problem first. The warranty is considered "secret" because all owners are not
2 │ notified of it. Instead, the automaker usually issues a TSB to its regional offices
3 │ and/or dealers on how to deal with the defect, although a TSB or other formal
4 │ document is not necessary to create a secret warranty. Because owners are kept in
5 │ the dark about the cost-free repair, the automaker only has to reimburse those
6 │ consumers who complain loudly enough; the quiet consumer either does not fix
7 │ the problem or pays to fix the defect by him or herself.

8 │     50.    Defendant is a "manufacturer" as that term is defined by section
9 │ 1795.50 of the California Secret Warranty Law. Section 1795.2 of the California
10 │ Secret Warranty Law imposes several duties on auto manufacturers like
11 │ Defendant, each of which is designed to do away with secret warranties.

12 │     51.    Plaintiff and members of the proposed Class are consumers as that
13 │ term is defined by section 1795.90(a) of the California Secret Warranty Law. The
14 │ California Secret Warranty law requires automakers to notify consumers, by first-
15 │ class mail, within 90 days of adoption, whenever they enact "any program or
16 │ policy that expands or extends the consumer's warranty beyond its stated limit or
17 │ under which [the] manufacturer offers to pay for all or any part of the cost of
18 │ repairing, or to reimburse consumers for all or any part of the cost of repairing,
19 │ any condition that may substantially effect vehicle durability, reliability, or
20 │ performance . . . ."

21 │     52.    The California Secret Warranty Law also requires automakers to
22 │ provide the New Motor Vehicle Board with a copy of the notice described above,
23 │ so the public can view, inspect, or copy that notice.

24 │     53.    Additionally, the California Secret Warranty Law requires
25 │ automakers to advise their dealers, in writing, of the terms and conditions of any
26 │ warranty extension, adjustment, or reimbursement program.

27 │     54.    The California Secret Warranty Law also requires an automaker to
28 │ "implement procedures to assure reimbursement of each consumer eligible under

1    an adjustment program who incurs expenses for diagnosis and repair of a

2    condition subject to the program prior to acquiring knowledge of the program."

3    **MBUSA's 2008 TSB**

4         55.    In 2005, 2006, and 2008, Defendant issued to only its dealers a TSB

5    that describes various problems with all the Class Vehicles and their radiators.

6    For example, in the 2008 secret TSB, MBUSA describes the Radiator Defect as

7    follows:

8              If you receive customer reports in the above model

9              vehicles [*i.e.*, the Class Vehicles] of humming/buzzing

10             noises or noticeable harsh engagement during gentle

11             acceleration between engine speed of 1200-2500 rpm;

12             . . . .

13        56.    The TSB then identifies as one possible cause for this problem:

14   "glycol contamination of the automatic transmission fluid."

15        57.    The TSB then identifies the remedies for determining and treating

16   glycol contamination of the automatic transmission fluid:

17             (1)    Perform glycol test;[4, 5]

18             (2)    If the glycol test reveals a glycol contamination of

19                    up to 100 mg/liter, this result is considered normal

20                    and not the result of a leak;

21             (3)    If the glycol test reveals a glycol contamination of

22                    greater than 100 mg/liter, replace radiator;

23

24        [4] The TSB instruct the dealer to perform the glycol test once it has been

25   determined that "incomplete adaptation of the torque converter" or "the

     transmission (EGS) ECU software" are not the cause of the problem.

26

27        [5] The "glycol test" is, according to the TSB, an 11-step test conducted

     using a test kit. The glycol test is used, in part, to measure the amount of coolant

28   contamination in automatic transmission fluid.

1            (4)    Clean and flush the transmission with the torque

2                converter and transmission oil cooler lines;

3            (5)    If the condition is still reproducible, replace the

4                torque converter.

5     (Emphasis added.)

6     58.    The TSB then provides the dealers with several "labor operations"

7 and "time allowance[s]" that allow MBUSA dealers to secretly submit any or all

8 of the above-described alleged fixes under warranty.

9     59.    Plaintiff is informed and believes and based thereon alleges that the

10 free Radiator Defect repairs outlined in Defendant's secret TSB is applicable to all

11 Class Vehicles, including Plaintiff's vehicle.

12     60.    Plaintiff is also informed and believes and based thereon alleges that

13 Defendant's clandestine, free software upgrade, glycol test and subsequent

14 transmission flushing and cleaning and radiator and/or torque converter

15 replacement TSB programs are strictly limited to the most persistent customers

16 and only those who make a repair visits to its dealerships and complain loudly

17 enough about the problem, regardless of whether or not their vehicles are covered

18 under MBUSA's warranty 4-year/50,000-mile warranty.[6]

19     61.    Plaintiff is also informed and believes and based thereon alleges that

20 to mollify those consumers who complain loudly enough, Defendant implemented

21 another clandestine program to secretly reimburse or pay for repair costs of those

22 Class Vehicles that suffer from the Radiator Defect and the related damage it

23 causes (*i.e.*, replacement of damaged transmissions and/or control modules, filters

24

25       [6] Indeed, MBUSA does not typically pay for cleaning and flushing of the

26 transmission fluid under its New Car Warranty (or any other warranty).
MBUSA's manuals consider the cleaning and flushing of the transmission fluid

27 to be a maintenance item. Again, this maintenance item is not included as part of

28 the warranty coverage.

1     etc.), even when the Radiator Defect and the related damage that it causes occurs

2     outside of the vehicle's 4-year/50,000-mile express warranty period.

3     62.    As with its secret TSB program, including the cost-free temporary

4     fixes, Defendant's secret repair and/or reimbursement program for the Radiator

5     Defect and the related damage it causes is also strictly limited to the most

6     persistent customers who complain loudly enough.

7     63.    Plaintiff is also informed and believes and based thereon alleges that

8     Defendant does not typically pay for cleaning and flushing of the transmission

9     fluid  or replacement of the transmission filters under its new car warranty (or any

10    other warranty) because Defendant considers these items to be maintenance, and

11    therefore, not covered by Defendant's warranty.  Thus, by extending its warranties

12    to pay for these maintenance items, Defendant has "expand[ed] or extend[ed] the

13    consumer's warranty beyond its stated limit."

14    64.    More importantly, the repair and/or replacement the 2008 TSB is

15    intended to address "substantially affect the vehicle durability, reliability, or

16    performance."  These items include, but are not limited to, replacement of the

17    transmission, torque converter, and radiator.  Therefore, the cost-free offers to

18    replace torque converter and radiator are considered "adjustment programs"

19    within the meaning of the California Secret Warranty Law for this reason as well.

20    65.    Plaintiff is informed and believes and based thereon alleges that

21    Defendant has also extended its warranty in another way: namely, by employing a

22    secret policy to pay for the Radiator-Defect-related damage of those consumers

23    who complain loudly enough regardless of whether or not these consumers

24    vehicles are covered by MBUSA's 4-year/50,000-mile warranty.  Like the 2008

25    TSB, the decision to offer these free repairs outside the vehicle's New Car

26    Warranty is not done on an *ad hoc* basis.  Rather, it is made pursuant to a

27    systematic policy—communicated to, *inter alia*, regional offices, dealers, and

28    MBUSA customer care personnel—to pacify the most vocal consumers so as to

1     preserve Defendant's reputation. Upon information and belief, the code names for
2     these policies include but are not limited to good will adjustments or policy
3     adjustments.

4        66.    Again, cleaning and flushing of the transmission fluid or replacement
5     of the transmission filters is not covered by the Class Vehicles' warranty
6     coverage. Thus, by extending its warranties to cover the Radiator Defect and/or
7     the related damage it causes, Defendant has "expand[ed] or extend[ed] the
8     consumer's warranty beyond its stated limit."

9        67.    Defendant's temporary repair of the Radiator Defect and/or repair of
10    damage caused by Radiator Defect (regardless of whether or not the vehicle is
11    covered under warranty) constitutes an adjustment program under the Secret
12    Warranty Law and constitutes an offer to pay for or to reimburse consumers for
13    the cost of repairing a condition that substantially affects vehicle durability,
14    reliability, or performance.

15       68.    As a result of the foregoing, Defendant is obligated to comply with
16    the provisions of the California Secret Warranty Law with respect to (among
17    others) its transmission, radiator, and torque converter replacement, and
18    reimbursement for Radiator-Defect-related problems. It has not done so.

19       69.    Specifically, Defendant did not notify Plaintiff, or any other owner or
20    lessee of a Class Vehicle, of their right to free repair of the Radiator Defect
21    andconsequent damage, or to be reimbursed for the cost of repairing the Radiator
22    Defect and consequent damage.

23       70.    Defendant has also refused to provide the free Radiator Defect repair
24    and/or replacement to owners or lessees of affected vehicles who have specifically
25    requested it. Moreover, Defendant failed to notify Plaintiff or any other owner or
26    lessee of a Class Vehicle of these available fixes and has refused to reimburse
27    owners or lessees of Class Vehicles for the consequent damages that the Radiator
28    Defect causes.

1    71. Additionally, Defendant has refused to reimburse consumers who

2 have paid to diagnose and/or repair the Radiator Defect and/or paid to repair

3 damage resulting from the Radiator Defect.

4    72. Upon information and belief, Defendant did not comply with the

5 dealer-notification provisions of the California Secret Warranty Law.

6    73. Upon information and belief, Defendant has also failed to comply

7 with the New Motor Vehicle Board notification procedures.

8                    **TOLLING OF THE STATUTE OF LIMITATIONS**

9    74. Since the defects in the design and/or manufacture of the Class

10 Vehicles resulting in Radiator Defect cannot be detected until the defect manifests

11 itself, Plaintiff and Class Members were not reasonably able to discover the

12 problem until long after purchasing or leasing the Class Vehicles, despite their

13 exercise of due diligence.

14    75. Plaintiff and Class Members had no realistic ability to discern the

15 Radiator Defect until the Radiator Defect manifested itself. In addition, despite

16 their due diligence, Plaintiff and Class Members could not reasonably have been

17 expected to learn or discover that they were deceived or that material information

18 concerning the Class Vehicles and their radiators were concealed from them until

19 manifestation of the defect. Therefore, the discovery rule is applicable to the

20 claims asserted by Plaintiff and the Class Members.

21    76. Upon information and belief, Defendant has known of the

22 manufacturing and/or design defects contained in the Class Vehicles since at least

23 2000, if not earlier, and has concealed from or failed to alert owners and lessees of

24 the Class Vehicles about the Radiator Defect.

25    77. Any applicable statutes of limitation have therefore been tolled by

26 Defendant's concealment and denial of the facts alleged herein, including at the

27 time of purchase or lease and repair. Defendant is further estopped from relying

28

Case No.                                    Page 19

1  on any statutes of limitation because of its concealment of the defective nature of
2  the Class Vehicles and their radiators.

3                          **CLASS ACTION ALLEGATIONS**

4          78.    Plaintiff brings this lawsuit as a class action on behalf of himself and
5  all other California residents similarly situated as members of a proposed Plaintiff
6  Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).
7  This action satisfies the numerosity, commonality, typicality, adequacy,
8  predominance, and superiority requirements of those provisions.

9          79.    The Class and Sub-Class are defined as:

10         Class: All persons in the State of California who purchased or leased a
11         model year 2004 or earlier C Class (W203) and CLK Class (W209)
12         Mercedes-Benz vehicle.

13         Sub-Class: All Members of the Class who are "consumers" within the
14         meaning of California Civil Code section 1761(d) ("the CLRA Sub-Class").

15         Excluded from the Class are Defendant, any entity in which Defendant has
16  a controlling interest or which has a controlling interest of Defendant, and
17  Defendant's legal representatives, assigns, and successors.  Also excluded is the
18  judge to whom this case is assigned, as well as any member of the judge's
19  immediate family.

20         80.    Claims for personal injury are specifically excluded from the Class.

21         81.    Plaintiff reserves the right to amend the Class and Sub-Class
22  definitions if discovery and further investigation reveal that the Class and Sub-
23  Class should be expanded or otherwise limited.

24         82.    Numerosity: Although the exact number of Class Members is
25  uncertain and can only be ascertained through appropriate discovery, the number
26  is great enough such that joinder is impracticable.  The disposition of the claims of
27  these Class Members in a single class action will provide substantial benefits to all
28  parties and to the Court.

Case No.                              Page 20

83. <u>Typicality</u>: The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, owns a Class Vehicle designed and manufactured by Defendant and that suffers from the Radiator Defect.  The representative Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that he has incurred or is substantially certain to incur the cost of repairing the Radiator Defect or repairing damage caused by the Radiator Defect.  Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

84. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any question affecting only individual Class Members.  These common legal and factual issues include the following.

    a.   Whether the Class Vehicles and their radiators are defectively designed or manufactured such that they are not suitable for their intended use;

    b.   Whether Defendant knew or should have known of the inherent design or manufacturing defect contained in its Class Vehicles;

    c.   Whether Defendant fraudulently concealed from or failed to disclose to Plaintiff and Class Members the inherent problems with its Class Vehicles and their radiators;

    d.   Whether Defendant had a duty to Plaintiff and Class Members to disclose the inherent problems with its Class Vehicles and their radiators;

    e.   Whether the facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material;

Case No.                              Page 21

1      f. Whether as a result of Defendant's concealment of or failure to

2       disclose material facts, Plaintiff and Class Members acted to

3       their detriment by purchasing Class Vehicles manufactured by

4       Defendant;

5      g. Whether Defendant failed to adequately warn Plaintiff and

6       Class Members about the limitations of its Class Vehicles and

7       their radiators;

8      h. Whether Defendant engaged in unfair competition or unfair

9       deceptive acts or practices when it concealed the limitations

10       and failed to warn Plaintiff and Class Members of the defects

11       contained in the Class Vehicles;

12      i. Whether Defendant's conduct in marketing, selling, and

13       leasing its Class Vehicles constitutes a violation of the

14       Consumers Legal Remedies Act, California Civil Code section

15       1750 *et seq.*;

16      j. Whether Defendant's conduct in marketing, selling, and

17       leasing its Class Vehicles constitutes a violation of the Unfair

18       Business Practices Act, California Business & Professions

19       Code section 17200 *et seq.*;

20      k. Whether the radiator and/or torque converter replacements

21       performed under Defendant's clandestine TSB program is an

22       "adjustment program" under the Secret Warranty Law;

23      l. Whether Defendant breached its implied warranties in that the

24       Class Vehicles were defectively designed and or manufactured;

25      m. Whether Defendant should be declared financially responsible

26       for notifying all Class Members of the problems with its Class

27       Vehicles and for the costs and expenses of repair and

28

1
2

           replacement of the Class Vehicles and their water drainage
system;

3
4

    n.    Whether Plaintiff and the Class are entitled to replacement of
parts related to the Radiator Defect; and

5
6

    o.    Whether Defendant breached the implied warranty of
merchantability.

7      85.    Adequate Representation: Plaintiff will fairly and adequately protect

8 the interests of the Class Members. Plaintiff has retained counsel with substantial

9 experience in prosecuting consumer class actions—specifically actions involving

10 defective products. Plaintiff and her counsel are committed to prosecuting this

11 action vigorously on behalf of the Class Members and have the financial resources

12 to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the

13 Class Members.

14     86.    Predominance and Superiority: Plaintiff and Class Members have all

15 suffered and will continue to suffer harm and damages as a result of Defendant's

16 unlawful and wrongful conduct. A class action is superior to other available

17 methods for the fair and efficient adjudication of the controversy. Absent a class

18 action, most Class Members would likely find the cost of litigating their claims

19 prohibitively high and would therefore have no effective remedy at law. Because

20 of the relatively small size of the individual Class Members' claims, it is likely

21 that only a few Class Members could afford to seek legal redress for Defendant's

22 misconduct. Absent a class action, Class Members will continue to incur

23 damages, and Defendant's misconduct will continue without remedy. Class

24 treatment of common questions of law and fact would also be superior to multiple

25 individual actions or piecemeal litigation in that class treatment will conserve the

26 resources of the courts and the litigants, and will promote consistency and

27 efficiency of adjudication.

28

1

## FIRST CLAIM FOR RELIEF

2

### (Violation of California's Consumers Legal Remedies Act,

3

### California Civil Code section 1750 *et seq.*)

4       87.     Plaintiff hereby incorporates by reference the allegations contained in

5    the preceding paragraphs of this Complaint.

6       88.     Plaintiff brings this cause of action against Defendant on behalf of

7    himself and on behalf of the Members of the CLRA Sub-Class.

8       89.     Defendant is a "person" as defined by Civil Code section 1761(c).

9       90.     Plaintiff and Class Members are consumers who purchased or leased

10   the Class Vehicles.

11      91.     By failing to disclose and concealing the Radiator Defect, Defendant

12   violated Civil Code section 1770(a), as it represented that its Class Vehicles had

13   characteristics and benefits that they do not have, and represented that its Class

14   Vehicles were of a particular standard, quality or grade when they were of

15   another. *See* Civ. Code §§ 1770(a)(5) & (7).

16      92.     Defendant's unfair or deceptive acts or practices occurred repeatedly

17   in Defendant's trade or business, were capable of deceiving a substantial portion

18   of the purchasing public, and imposed a serious safety risk on the public.

19      93.     Defendant knew that its Class Vehicles and their radiators were

20   defectively designed or manufactured, would fail prematurely, and were not

21   suitable for their intended use.

22      94.     Defendant was under a duty to Plaintiff and Class Members to

23   disclose the defective nature of the Class Vehicles and their radiators:

24               a.    Defendant was in a superior position to know the true state of

25                     facts about the safety defect and associated repair costs in the

26                     Class Vehicles and their radiators;

27               b.    Plaintiff and the Class Members could not reasonably have

28                     been expected to learn or discover that the Class Vehicles and

Case No.                                  Page 24

1            their radiators had a dangerous safety defect until manifestation

2            of the failure; and

3          c.    Defendant knew that Plaintiff and the Class Members could

4            not reasonably have been expected to learn or discover the

5            safety defect and the associated repair costs that it causes.

6     95.     In failing to disclose the Radiator Defect and the associated repair

7 costs that result from it, Defendant has knowingly and intentionally concealed

8 material facts and breached its duty not to do so.

9     96.     The facts concealed or not disclosed by Defendant to Plaintiff and

10 Class Members are material in that a reasonable consumer would have considered

11 them to be important in deciding whether to purchase Defendant's Class Vehicles

12 or pay a lesser price. Had Plaintiff and the Class known about the defective nature

13 of the Class Vehicles and their radiators, they would not have purchased the Class

14 Vehicles or would have paid less for them.

15     97.     Plaintiff and Class Members reasonably expected the Class Vehicles

16 and their radiator coolant would not contaminate the automatic transmission fluid

17 and the transmission itself, causing their transmissions to experience premature

18 failure. That is the reasonable and objective consumer expectation.

19     98.     As a direct and proximate result of Defendant's unfair or deceptive

20 acts or practices, Plaintiff and Class Members have suffered and will continue to

21 suffer actual damages.

22     99.     Plaintiff and Class Members are also entitled to equitable and

23 injunctive relief.

24     100.    Plaintiff has provided Defendant with notice of its alleged violations

25 of the CLRA pursuant to Civil Code section 1782(a). If, within 30 days of the

26 date of the notification letter, Defendant fails to provide appropriate relief for its

27 violation of the CLRA, Plaintiff will amend this Complaint to seek monetary,

28

1  compensatory, and punitive damages, in addition to the injunctive and equitable
2  relief that he seeks now.

3  ## SECOND CLAIM FOR RELIEF

4  **(Violation of California's Unfair Business Practices Act, California Business**
5  **& Professions Code section 17200 *et seq*. – Violations of California's Secret**
6  **Warranty Law)**

7  101. Plaintiff hereby incorporates by reference the allegations contained in
8  the preceding paragraphs of this Complaint.

9  102. Plaintiff brings this cause of action on behalf of himself and on behalf
10  of the Class Members.

11  103. By committing the acts and practices alleged herein, Defendant
12  violated the Secret Warranty Law, and by doing so, has engaged in deceptive,
13  unfair, and unlawful business practices in violation of the Unfair Competition Law
14  ("UCL"), California Business & Professions Code section 17200 *et seq.*

15  104. Defendant's violation of the Secret Warranty Law (hence the UCL)
16  continues to this day. As a direct and proximate result of Defendant's violations
17  of the Secret Warranty Law, hence the UCL, Plaintiff and Class Members have
18  suffered damages related to the Radiator Defect.

19  105. Pursuant to section 17203 of the UCL, Plaintiff and Class Members
20  seek an order of this Court requiring Defendant to comply with the terms of the
21  California Secret Warranty Law by:

22              a.    notifying Class Members of the secret program for repairing
23                    the Radiator Defect and reimbursing for damage caused by the
24                    Radiator Defect as required by the California Secret Warranty
25                    Law;

26              b.    providing free repairs and/or replacements to all Class
27                    Members as required by the Secret Warranty Law;

28

Case No.                              Page 26

1     c. identifying and reimbursing all Class Members who have

2       incurred costs related to the Radiator Defect as required by the

3       Secret Warranty Law;

4     d. notifying California dealers of the facts underlying Radiator

5       Defect and the terms of the secret program for repairing the

6       Radiator Defect and reimbursing consumers for damage caused

7       by the Radiator Defect, as required by the Secret Warranty

8       Law; and

9     e. notifying California New Motor Vehicle Board of the secret

10       program for repairing the Radiator Defect and reimbursing

11       consumers for damage caused by the Radiator Defect as

12       required by the Secret Warranty Law.

13  106. Plaintiff and Class Members also seek an order:

14     a. enjoining Defendant from failing and refusing to make full

15       restitution of all moneys wrongfully obtained as a result of its

16       violations of the California Secret Warranty Law; and

17     b. disgorging to Plaintiff and Class Members all ill-gotten

18       revenues and/or profits earned as a result of Defendant's

19       violation of the California Secret Warranty Law, plus an award

20       of attorneys' fees and costs. This is because Defendant

21       profited from its sale of replacement parts to mechanics and

22       dealers because they ultimately replaced, repaired, corrected,

23       or modified the defective radiator and/or replaced parts related

24       to the Radiator Defect and damage caused by the Radiator

25       Defect.

26

27

28

1 | **THIRD CLAIM FOR RELIEF**

2 | **(Violation of UCL other than Violation of the Secret Warranty Law,**

3 | **California's Unfair Business Practices Act, California Business & Professions**

4 | **Code section 17200 *et seq.*)**

5 | 107. Plaintiff hereby incorporates by reference the allegations contained in

6 | the preceding paragraphs of this Complaint.

7 | 108. Plaintiff brings this cause of action against Defendant on behalf of

8 | himself and on behalf of the Class Members.

9 | 109. California Business & Professions Code section 17200 prohibits acts

10 | of "unfair competition," including any "unlawful, unfair or fraudulent business act

11 | or practice" and "unfair, deceptive, untrue or misleading advertising."

12 | 110. Defendant knew its Class Vehicles and their radiators were

13 | defectively designed and/or manufactured, would fail prematurely, and were not

14 | suitable for their intended use.

15 | 111. Defendant concealed and failed to disclose to Plaintiff and Class

16 | Members the defective nature of the Class Vehicles and their radiators:

17 |         a.    Defendant was in a superior position to know the true state of

18 |               facts about the safety defects contained in the Class Vehicles;

19 |         b.    Defendant made partial disclosures about the quality of the

20 |               Class Vehicles without revealing that they were defective and

21 |               highly prone to glycol contamination in the automatic

22 |               transmission fluid; and

23 |         c.    Defendant actively concealed the defective nature of the Class

24 |               Vehicles from Plaintiff and the Class.

25 | 112. In failing to disclose the Radiator Defect, Defendant has knowingly

26 | and intentionally concealed material facts and breached its duty not to do so.

27 | 113. The facts concealed or not disclosed by Defendant to Plaintiff and the

28 | Class are material in that a reasonable person would have considered them to be

1   important in deciding whether to purchase the Class Vehicles or pay a lesser price

2   for them.  Had Plaintiff and the Class Members known about the defective nature

3   of the Class Vehicles, they would not have purchased the Class Vehicles or would

4   have paid less for them.

5     114. Defendant continues to conceal the defective nature of the Class

6   Vehicles even after Class Members began to report problems.  Indeed, to this date,

7   Defendant continues to conceal the true nature of this problem.

8     115. By its conduct alleged herein, Defendant has engaged in unfair

9   competition and unlawful, unfair, and fraudulent business acts and practices.

10     116. Defendant's unfair or deceptive acts or practices occurred repeatedly

11   in Defendant's trade or business and were capable of deceiving a substantial

12   portion of the purchasing public.

13     117. As a direct and proximate result of Defendant's unfair and deceptive

14   practices, Plaintiff and Class Members have suffered and will continue to suffer

15   actual damages.

16     118. Defendant has been unjustly enriched and should be required to make

17   restitution to Plaintiff and the Class Members pursuant to sections 17203 and

18   17204 of the California Business & Professions Code.

19          **FOURTH CAUSE OF ACTION**

20   **(Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty**

21     **Act, California Civil Code sections 1792 and 1791.1 *et. seq.*)**

22     119. Plaintiff hereby incorporates by reference the allegations contained in

23   the preceding paragraphs of this Complaint.

24     120. Plaintiff brings this cause of action against Defendant on behalf of

25   herself and on behalf of the Class Members.

26     121. Defendant was at all relevant times the manufacturer, distributor,

27   warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to

28   know of the specific use for which the Class Vehicles were purchased.

1        122.   Defendant provided Plaintiff and Class Members with an implied

2  warranty that the Class Vehicles and their radiators are merchantable and fit for

3  the ordinary purposes for which they were sold.  However, the Class Vehicles and

4  their radiators are not fit for their ordinary purpose of providing reasonably

5  reliable and safe transportation because, *inter alia*, the Class Vehicles and their

6  radiators are defective due to the Radiator Defect and the resulting damage and

7  safety-related hazards that it can cause.

8        123.   Plaintiff relied on implied warranties of merchantability made by

9  Defendant concerning the Class Vehicles and sustained substantial damages

10  resulting from the breach of those warranties by the Defendant.

11       124.   Plaintiff and Class Members purchased the Class Vehicles within the

12  State of California.  Defendant impliedly warranted that the Class Vehicles were

13  of merchantable quality and fit for such use at the time of sale.  This implied

14  warranty included, among other things: (a) a warranty that the Class Vehicles

15  were manufactured, supplied, distributed, and/or sold by Defendant were safe for

16  providing safe and reliable transportation; and (b) a warranty that the Class

17  Vehicles would be fit for their intended use and would not experience glycol

18  contamination in the automatic transmission fluid as a result of the  Radiator

19  Defect when they are driven within their range of operation and during foreseeable

20  and normal usage.

21       125.   Contrary to the applicable implied warranties, the Class Vehicles at

22  the time of sale and thereafter were not fit for their ordinary and intended purpose

23  of providing Plaintiff and the Class Members with durable and safe transportation

24  during normal and/or foreseeable usage.  Instead, the Class Vehicles are defective,

25  which defects include, but are not limited to, the Radiator Defect.

26       126.   Defendant's actions, as complained of herein, breached the implied

27  warranty that the Class Vehicles were of merchantable quality and fit for such use

28  in violation of  California Civil Code sections 1792 and 1791.1.

| | |
|---|---|
| 1 | **RELIEF REQUESTED** |
| 2 |     127.  Plaintiff, on behalf of himself and all others similarly situated, |
| 3 | requests the Court enter judgment against Defendant, as follows: |
| 4 |           a.     an order certifying the proposed Plaintiff Class, designating |
| 5 | Plaintiff as the named representative of the Class and |
| 6 | designating the undersigned as Class Counsel; |
| 7 |           b.     a declaration that Defendant is financially responsible for |
| 8 | notifying all Class Members of the problems with its Class |
| 9 | Vehicles and the Radiator Defect; |
| 10 |           c.     an order requiring Defendant to comply with the Secret |
| 11 | Warranty Law by (i) notifying Class Members of the secret |
| 12 | diagnosis of the Radiator Defect, secret replacement of the |
| 13 | radiator and/or torque converter, and secret reimbursement for |
| 14 | Radiator-Defect-related damage, as required by the California |
| 15 | Secret Warranty Law; (ii) providing free replacement, |
| 16 | modification, and correction related to the Radiator Defect to |
| 17 | all Class Members as required by the Secret Warranty Law; |
| 18 | (iii) identifying and reimbursing all Class Members who have |
| 19 | paid for repairing and diagnosing the Radiator Defect, |
| 20 | replacement of parts related to Radiator Defect, and repair or |
| 21 | replacement for damage caused as a result of the Radiator |
| 22 | Defect, as required by the Secret Warranty Law; (iv) notifying |
| 23 | California dealers of the facts underlying the Radiator Defect |
| 24 | and associated problems, the terms of MBUSA's secret |
| 25 | Radiator Defect repair program, and the repair, replacement, |
| 26 | and reimbursement for Radiator-Defect-related damage, as |
| 27 | required by the Secret Warranty Law; and (iv) notifying the |
| 28 | California New Motor Vehicle Board of MBUSA's secret |

Case No.                                 Page 31

Radiator Defect repair program, as well as the secret repair, replacement, and reimbursement for Radiator-Defect-related damage, as required by the Secret Warranty Law;

d. an order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to its Class Vehicles;

e. an order to repair the Radiator Defect and any damage caused by the Radiator Defect;

f. an award to Plaintiff and the Class Members of compensatory, statutory, and punitive damages, including interest, in an amount to be proven at trial, except that for now, Plaintiff seeks only equitable and injunctive relief with respect to her claims under California's Consumer's Legal Remedies Act, California Civil Code section 1750 *et seq.*;

g. an award to Plaintiff and the Class Members of all incidental and consequential damages, including interest, which have resulted from Defendant's breach of its implied warranties;

h. any and all remedies provided pursuant to the Song-Beverly Act, including California Civil Code section 1794;

i. a declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles, or to make full restitution to Plaintiff and the Class Members;

j. an award of attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5, the common fund theory, or any other applicable statute, theory, or contract;

k. an award of pre-judgment and post-judgment interest, as provided by law;

1        l.    leave to amend the Complaint to conform to the evidence

2              produced at trial; and

3        m.   such other or further relief as may be appropriate under the

4              circumstances.

5

6                 **DEMAND FOR JURY TRIAL**

7      128.   Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of

8  any and all issues in this action so triable of right.

9

10

Dated: February 2, 2011

By:

Robert L. Starr, Esq.
**THE LAW OFFICE OF ROBERT L. STARR**
Attorneys for Plaintiff

Payam Shahian (State Bar No. 228406)
e-mail: pshahian@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

Matthew R. Mendelsohn (awaiting pro hac vice)
David A. Mazie (awaiting pro hac vice)
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

Dara Tabesh (State Bar No. 230434)
e-mail: DTabesh@hotmail.com
201 Spear St. Ste. 1100
San Francisco, CA 94105
Telephone: (415) 595-9208
Facsimile: (310) 693-9083

Case No.             Page 33

CLASS ACTION COMPLAINT

# EXHIBIT 1

Mercedes-Benz

*star bulletin* 

**DTB**

| | |
|---|---|
| Date: | March 24, 2006 |
| Order No.: | P-B-27.55/50f |
| Supersedes: | P-B-27.55/50e dated March 6, 2006 |
| Group: | 27 |

**Revision History**

| Revision | Date | Purpose |
|---|---|---|
| f | 3/24/06 | "Perform Repair Based on Test Result" – Procedure Updated / Warranty Info. Updated |
| e | 3/6/06 | "Perform Repair Based on Test Result" – Procedure Updated |
| d | 8/29/05 | Warranty Information Updated |
| c | 8/18/05 | "Perform Repair Based on Test Result" – Step 2 Revised / Warranty Info. Updated |
| b | 4/6/05 | Addition of Note After Step 3 Pertaining to AMG Model Vehicles |
| a | 2/17/05 | Additional Applicable Models, Parts and Warranty Information Updated |
| - | 01/27/05 | Initial issue |

**SUBJECT:**   Model 203.040/061/064/065/081/084/261/264/281/284/740/747/764

Model 209.365/375/376/465/475

Model 211.065/070/076/083/265/283

Up to Production Date 09/2003

Harsh Engagement Possibly Followed by Droning/Buzzing Noises During Light

Acceleration Between Engine Speed of 1200 – 2500 RPM

If you receive customer reports in the above model vehicles of humming/buzzing noises or noticeable harsh engagement during gentle acceleration between engine speed of 1200 – 2500 rpm; this may be caused by incomplete adaptation of the torque converter, the transmission (EGS) ECU software or glycol contamination of the automatic transmission fluid. Follow the below repair procedures to resolve.

**ⓘ Note:** The condition is not intermittent and can be reproduced at all times.

**ⓘ Note:** The Glycol test must be performed only if:

a. the vehicle was produced before 09/2003,
b. the radiator is manufactured by "Valeo", refer to Figure 1 for identification,
c. old crimping method used to assemble the radiator end tanks resembles Figure 2.



Figure 1                                            P-B-27.55/50

This bulletin has been created and maintained in accordance with MBUSA-SLP S423QH001, Document and Data Control, and MBUSA-SLP S424HH001, Control of Quality Records.

© 2006 Mercedes-Benz USA, LLC.
Mercedes-Benz Canada, Inc.
Dealer Workshop Services
www.MBUSA.com
www.startekinfo.com

All rights reserved. Reproduction or translation in whole or in part is not permitted without authorization from the publisher. Printed in U.S.A.
1-800-FOR-MERCedes



Figure 2                                     P-B-27.55/50   Figure 3                              P-B-27.55/50
Old Crimping Method                                         New Crimping Method

⚠ **Caution!** It is mandatory to follow the process steps in sequence.

1. Clear all adaption values.
2. Verify if condition is still present
3. If condition is still present after clearing all EGS ECU adaption values, perform glycol test.

ℹ️ **Note:** Steps 4 and 5 do NOT apply to AMG Vehicles (203.065, 209.376 and 211.076).

4. If condition is no longer present after clearing all EGS ECU adption values, replace the EGS ECU with updated software with part number listed in the parts information table.
5. If condition reappears after EGS ECU software updates, perform glycol test.

### Instructions for Glycol Test

⚠ **Caution!** Ensure that safety glasses and rubber gloves are worn when performing glycol test. This test should be performed in a clean and well ventilated area away from organic materials (rags, cardboard, oils and other chemicals). Refer to the Material Safety Data Sheets (MSDs) for additional safety measures.

1. Fill 0.5 ml of ATF with the pipette in the small glass container (Figure 4, 1).
2. Fill with distilled water to 5 ml (Figure 4, 2).
3. Add 1 drop of "Tenside" (Figure 4, 3).
4. Add 1 micro spoon of "Periodic acid" and rock the small glass container (Figure 4, 4).
5. Allow to stand for 5 minutes (Figure 4, 5).

ℹ️ **Note:** It is essential to comply with the specified standing time in step 5; otherwise the measured value result may be distorted.

6. Add 10 drops of "Natronlauge" or Caustic Soda Solution (Figure 4, 6).
7. Allow to stand for 3 minutes (Figure 4, 7).

ℹ️ **Note:** It is essential to comply with the specified standing time in step 7; otherwise the measured value result maybe distorted.

8. The sample is now divided into 2 layers; an upper and a lower layer. Immerse the syringe so that the end tip is into the lower layer of the sample and take up approximately 4 ml. of the lower layer using the syringe (Figure 4, 8).
9. Pour the fluid taken up through the filter into a clean small glass container (Figure 4, 9).
10. Immerse test sticks into the filtered solution for approximately 2 seconds, shake the stick and wait for a reaction time of one minute (Figure 4, 10).
11. Compare the color of the test sticks with the color chart on the test stick tube (Figure 4, 11).

**i** **Note:** The colors of the color chart tube correspond to the amount of glycol contamination of the ATF. After completion of the test, the liquid in the two glass containers should be handled as a hazardous waste. Store in a sealed container and dispose of in accordance with all Federal, state and local hazardous waste regulations.

**Perform repair based on the test result:**

1. Up to 100 mg/liter of glycol contamination do not perform any repair (considered normal due to condensed water and not a leak).
2. As of 100 mg/liter of glycol contamination, replace radiator. Clean and flush the transmission with the torque converter and transmission oil cooler lines. Refer to WIS Document AR27.55-P-0100A.
3. If the condition is still reproducible after the flush routine, replace the torque converter.



Figure 4

P-B-27.55/50

## Parts Information

| Qty. | Part Name | Part Number |
|------|-----------|-------------|
| 1 | Glycol Test Kit Part #1 | A000 989 00 09 [1]** |
| 1 | Glycol Test Kit Part #2 | A000 989 00 14 [1]** |
| 1 | ATF Sample Container | W000 589 49 98 00 [2] |
| 1 | EGS ECU (211 MY 2003) [3] | A034 545 41 32 |
| 1 | EGS ECU (211 MY 2004) [3] | A034 545 44 32 |
| 1 | EGS ECU (209 MY 2004) [3] | A034 545 42 32 |
| 1 | EGS ECU (203 MY 2004) [3] | A035 545 30 32 |

[1] – Sufficient for 30 vehicles, submit as local purchase "Glycol 01511" quantity of 1 (handling is included).
[2] – The special tool, W000 589 49 98 00, will be stocked in the PDC and can be ordered at the descretion of the dealer.  It is not an automatically released item.
[3] – Does not apply to AMG Vehicles (203.065, 209.376 and 211.076), verify part no. is EPC before ordering.

**Parts are in a critical supply situation and will be limited, please see the PAC weekly status report on parts availability status and delivery expectations. This report is located on the PAC website.**

[i] **Note:** The following allowable labor operations should be used when submitting a warranty claim for this repair.

### In Case of Warranty

**Operation:**       Short test, perform (54-1011)
**If necessary:**    Control unit….code (after test), perform (54-0992)
                     Road test, perform (00-9151)
                     Control module – for electronic transmission (722.6), replace (27-2351)
                     Glycol test, perform (02-4609)
                     Radiator, replace (20-4000)
                     Addl. to operation no. 3865/4000 – vehicles with auto. Trans. (20-4300)
                     Automatic transmission and torque converter, flush (27-4863)
                     Automatic transmission (722.6-electronic), R&R (27-2028)

| Damage Code | Operation Number | Time (hrs.) | Model Indicator (s) |
|-------------|------------------|-------------|---------------------|
| 27431 04 | 54 1011 | 0.3 hrs. | P1, P2, P3, P4, P5, P6 P7, P8, P9, Q1, Q2, Q3, Q4, S1, S2, S3, S4, S5, T1, T2, T3, T5, U1, U3 |
| If necessary: | 54 0992 | 0.1 hrs. | P1, P2, P4, P5, P6, P7, P8, P9, Q1, Q2, Q3, Q4, S1, S2, S4, S5, T1, T2, T5, U1, U3 |
| | 00 9151 | 0.3 hrs. | P1, P2, P4, P5, P6, P7, P8, P9, Q1, Q2, Q3, Q4, S1, S2, S4, S5, T1, T2, T5, U1, U3 |
| | 27 2351 | 0.3 hrs. | P1, P2, P4, P5, P6, P7, P8, P9, Q1, Q2, Q3, Q4, S1, S2, S4, S5, T1, T2, T5, U1, U3 |

| | | |
|---|---|---|
| 02 4609 | 0.5 hrs. | P1, P2, P3, P4, P5, P6, P7, P8, P9, Q1, Q2, Q3, Q4 |
| | 0.6 hrs. | S1, S2, S3, S4, S5, T1, T2, T3, T5, U1, U3 |
| 00 9151 | 0.3 hrs. | P1, P2, P4, P5, P6, P7, P8, P9, Q1, Q2, Q3, Q4, S1, S2, S4, S5, T1, T2, T5, U1, U3 |
| 20 4000 | 1.6 hrs. | S1, S2, S4, S5, U3 |
| | 1.7 hrs. | T1, U1 |
| | 1.9 hrs. | P3, S3 |
| | 2.1 hrs. | T2, T5 |
| | 2.2 hrs. | P1, P2, P4, P6, P7, P8, P9, Q2, Q4, T3 |
| | 3.3 hrs. | P5 |
| | 3.6 hrs. | Q1, Q3 |
| 20 4300 | 0.2 hrs. | P5, Q1, Q3 |
| | 0.3 hrs. | P1, Q2, Q4 |
| 27 4863 | 2.4 hrs. | P1, P2, P3, P4, P5, P6, P7, P8, P9, Q1, Q2, Q3, Q4, S1, S2, S3, S4, S5, T1, T2, T3, T5, U1, U3 |
| 27 2028 | 3.7 hrs. | T1, T2, U1 |
| | 4.0 hrs. | T3 |
| | 4.2 hrs. | S1, S4 |
| | 4.8 hrs. | T5, U3 |
| | 5.1 hrs. | P1, P2, P3, P4, P5, Q2, Q4, S2, S5 |
| | 5.2 hrs. | S3 |
| | 6.3 hrs. | Q1, Q3 |
| | 6.6 hrs. | P6, P7, P8, P9 |

**ALLDATA**
*Online* Home | Account | Contact ALLDATA | Log Out | Help

Select Vehicle | New TSBs | Technician's Reference

Component Search:                    OK

LAW OFFICE OF ROBERT L. STARR
LAW OFFICE OF R00001

Conversion Calculator

*2002 Mercedes Benz C 240 Sedan (203.061) V6-2.6L (112.912)*

Vehicle Level → Technical Service Bulletins → All Technical Service Bulletins    A/T - Harsh Engagement/Droning/Buzzing Noise

## A/T - Harsh Engagement/Droning/Buzzing Noise

Date: March 6, 2008

Order No.: P-B-27.55/50g

Supercedes: P-B-27.55/50f dated March 24, 2006

Group: 27

Revision History

| Revision | Date | Purpose |
|---|---|---|
| g | 3/6/08 | Note Added pertaining to Warranty Information |
| f | 3/24/06 | "Perform Repair Based on Test Results" - Procedure Updated/Warranty Info. Updated |
| e | 3/6/06 | "Perform Repair Based on Test Results" - Procedure Updated |
| d | 8/29/05 | Warranty Information Updated |
| c | 8/18/05 | "Perform Repair Based on Test Results" - Step 2 Revised/Warranty Info. Updated |
| b | 4/6/05 | Addition of Note After Step 3 Pertaining to AMG Model Vehicles |
| a | 2/17/05 | Additional Applicable Models, Parts and Warranty Information Updated |
| - | 01/27/05 | Initial issue |

SUBJECT:
Model 203.040/061/064/065/081/084/261/264/281/284/740/747/764
Model 209.365/375/376/465/475
Model 211.065/070/076/083/265/283

Up to Production Date 09/2003

Harsh Engagement Possibly Followed by Droning/Buzzing Noises During Light Acceleration Between Engine
Speed of 1200 - 2500 RPM

If you receive customer reports in the above model vehicles of humming/buzzing noises or noticeable harsh
engagement during gentle acceleration between engine speed of 1200 - 2500 rpm; this may be caused by
incomplete adaptation of the torque converter, the transmission (EGS) ECU software or glycol contamination of
the automatic transmission fluid. Follow the below repair procedures to resolve.

**Note:** The condition is not intermittent and can be reproduced at all times.

**Note:** The Glycol test must be performed only if:

a. the vehicle was produced before 09/2003,



Figure 1

Zoom                  Sized for Print

b. the radiator is manufactured by "Valeo", refer to Figure 1 for identification,



Figure 2
Old Crimping Method

Zoom                  Sized for Print



Figure 3
New Crimping Method

Zoom                  Sized for Print

Case 2:11-cv-01032-VBF -PJW   Document 1   Filed 02/02/11   Page 43 of 53   Page ID #:45

c. old crimping method used to assemble the radiator end tanks resembles Figure 2 and 3.
**Caution!** It is mandatory to follow the process steps in sequence.

1. Clear all adaption values.
2. Verify if condition is still present
3. If condition is still present after clearing all EGS ECU adaption values, perform glycol test.

   **Note:** Steps 4 and 5 do NOT apply to AMG Vehicles (203.065, 209.376 and 211.076).
4. If condition is no longer present after clearing all EGS ECU adption values, replace the EGS ECU with updated software with part number listed in the parts information table.
5. If condition reappears after EGS ECU software updates, perform glycol test.

Instructions for Glycol Test

**Caution!** Ensure that safety glasses and rubber gloves are worn when performing glycol test. This test should be performed in a clean and well ventilated area away from organic materials (rags, cardboard, oils and other chemicals). Refer to the Material Safety Data Sheets (MSDs) for additional safety measures.



Zoom                          Sized for Print

1. Fill 0.5 ml of ATF with the pipette in the small glass container (Figure 4, 1).
2. Fill with distilled water to 5 ml (Figure 4, 2).
3. Add 1 drop of "Tenside" (Figure 4, 3).

4. Add 1 micro spoon of "Periodic acid" and rock the small glass container (Figure 4, 4).
5. Allow to stand for 5 minutes (Figure 4, 5).

   **Note:** It is essential to comply with the specified standing time in step 5; otherwise the measured value result may be distorted.

6. Add 10 drops of "Natronlauge" or Caustic Soda Solution (Figure 4, 6).
7. Allow to stand for 3 minutes (Figure 4, 7).

   **Note:** It is essential to comply with the specified standing time in step 7; otherwise the measured value result maybe distorted.

8. The sample is now divided into 2 layers; an upper and a lower layer. Immerse the syringe so that the end tip is into the lower layer of the sample and take up approximately 4 ml. of the lower layer using the syringe (Figure 4, 8).
9. Pour the fluid taken up through the filter into a clean small glass container (Figure 4, 9).
10. Immerse test sticks into the filtered solution for approximately 2 seconds, shake the stick and wait for a reaction time of one minute (Figure 4. 10).
11. Compare the color of the test sticks with the color chart on the test stick tube (Figure 4, 11).

   **Note:** The colors of the color chart tube correspond to the amount of glycol contamination of the ATF. After completion of the test, the liquid in the two glass containers should be handled as a hazardous waste. Store in a sealed container and dispose of in accordance with all Federal, state and local hazardous waste regulations.

Perform repair based on the test result:

1. Up to 100 mg/liter of glycol contamination do not perform any repair (considered normal due to condensed water and not a leak).
2. As of 100 mg/liter of glycol contamination, replace radiator. Clean and flush the transmission with the torque converter and transmission oil cooler lines. Refer to WIS Document AR27.55-P-0100A.
3. If the condition is still reproducible after the flush routine, replace the torque converter.

| Qty. | Part Name | Part Number |
|------|-----------|-------------|
| 1 | Glycol Test Kit Part #1 | A000 989 00 09 15 |
| 1 | Glycol Test Kit Part #2 | A000 989 00 14 |
| 1 | ATF Sample Container | W000 589 49 98 00 |
| 1 | EGS ECU (211 MY 2003) | A034 545 41 32 |
| 1 | EGS ECU (211 MY 2004) | A034 545 44 32 |
| 1 | EGS ECU (209 MY 2004) | A034 545 42 32 |
| 1 | EGS ECU (203 MY 2004) | A035 545 30 32 |

¹ – Sufficient for 30 vehicles. Submit as Local Purchase – GLC01S94, Qty 1, handling is included
² – The special tool, W000 589 49 98 00. will be stocked in the PDC and can be ordered at the discretion of the dealer. It is not an automatically released item.
³ – Does not apply to AMG Vehicles (203 065, 209 376 and 211 076). verify part no. is EPC before ordering

Zoom                        Sized for Print

Parts Information

**Note:** This repair is only valid for the models listed above up to a production date of 09/2003. Also, operation Glycol test, perform (00-9151)" is not valid on any repairs outside of this document. Failure to comply will result in actions up to and including claim debits.

**Note:** The following allowable labor operations should be used when submitting a warranty claim for this repair. This information has been generated on March 24, 2006. Please refer to Netstar --> Star TekInfo --> Star Time for the most current labor time allowance.

Zoom          Sized for Print

| Damage Code | Operation Number | Time (hrs.) | Model Indicator (s) |
|---|---|---|---|
| | 02 4609 | 0 5hrs | P1 P2 P3 P4 P5 P6 P7 P8 P9 Q1 Q2 Q3 Q4 |
| | | 0 6 hrs | S1 S2 S3 S4 S5 T1 T2 T3 T5 U1 U3 |
| | 09 9151 | 0 3 hrs | P1 P2 P4 P5 P6 P7 P8 P9 Q1 Q2 Q3 Q4 S1 S2 S4 S5 T1 T2 T5 U1 U3 |
| | 20 4060 | 1 6 hrs | S1 S2 S4 S5 U3 |
| | | 1 7 hrs | T1 U1 |
| | | 1 9 hrs | P3 S3 |
| | | 2 1 hrs | T2 T5 |
| | | 2 2 hrs | P1 P2 P4 P6 P7 P8 P9 Q2 Q4 T3 |
| | | 3 3 hrs | P5 |
| | | 3 6 hrs | Q1 Q3 |
| | 20 4300 | 0 2 hrs | P5 Q1 Q3 |
| | | 0 3 hrs | P1 Q2 Q4 |
| | 27 4863 | 2 4 hrs | P1 P2 P3 P4 P5 P6 P7 P8 P9 Q1 Q2 Q3 Q4 S1 S2 S3 S4 S5 T1 T2 T3 T5 U1 U3 |
| | 27 2028 | 3 7 hrs | T1 T2 U1 |
| | | 4 0 hrs | T3 |
| | | 4 2 hrs | S1 S4 |
| | | 4 8 hrs | T5 U3 |
| | | 5 1 hrs | P1 P2 P3 P4 P5 Q2 Q4 S2 S5 |
| | | 5 2 hrs | S3 |
| | | 6 3 hrs | Q1 Q3 |
| | | 6 6 hrs | P6 P7 P8 P9 |

Zoom          Sized for Print

In case of Warranty, use the table above.

© 2011 ALLDATA LLC. All rights reserved.
Terms of Use

EXHIBIT 2

1  Robert L. Starr (State Bar No. 183052)
   e-mail: starresq@hotmail.com
2  **THE LAW OFFICE OF ROBERT L. STARR**
   23277 Ventura Boulevard
3  Woodland Hills, California, 91364-1002
   Telephone: (818) 225-9040
4  Facsimile: (818) 225-9042
5
6  Attorneys for Plaintiff NADIA KAS
7
8              UNITED STATES DISTRICT COURT
9       CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION
10

| | |
|---|---|
| NADIA KAS, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | Case Number:<br><br>**DECLARATION OF ROBERT L. STARR IN SUPPORT OF PLAINTIFF'S SELECTION OF FORUM FOR TRIAL OF PLAINTIFF'S CLAIMS ARISING UNDER THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**<br><br>[Cal. Civ. Code, § 1780, subd. (d)] |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No.:

# DECLARATION OF ROBERT L. STARR

I, Robert L. Starr, declare:

1.     I am admitted, in good standing, to practice as an attorney in the State of California. All of the matters set forth herein are within my personal knowledge, except those matters that are stated to be upon information and belief. As to such matters, I believe them to be true.

2.     Pursuant to Cal. Civ. Code § 1780(d), this Declaration is submitted in support of Plaintiff's selection of forum for trial of Plaintiff's cause of action alleging violation of California's Consumer Legal Remedies Act.

3.     On information and belief, Defendant MERCEDES-BENZ USA, LLC ("MERCEDES") is a Delaware Limited Liability Company with its principal place of business in Montvale, New Jersey. Defendant MERCEDES conducts business it the state of California, County of Los Angeles, and is domiciled at 818 West 7th Street, Los Angeles, California 90017.

4.     MERCEDES, through its business of distributing, selling, and leasing vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate. MERCEDES is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

5.     In addition, a substantial part of the events or omissions giving rise to Plaintiff's claims and a substantial part of the property that is the subject of this action are in this district. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

6.     Based on the facts set forth herein, this Court is a proper venue for the prosecution of Plaintiff's cause of action alleging violation of California's Consumer Legal Remedies Act. *See* Cal. Civ. Code § 1780(d).

///

///

///

Case No.:                                    Page 1

1    I declare under penalty of perjury under the laws of the State of California

2    and the United States of America that the foregoing is true and correct and that

3    this declaration was executed by me on this __1st__ day of February 2011, at

4    Woodland Hills, California.

5

6    _____

7    Robert L. Starr, Esq.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Valerie Baker Fairbank and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV11- 1032 VBF (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Robert L. Starr (State Bar Number 183052)
email: starresq@hotmail.com
THE LAW OFFICE OF ROBERT L. STARR
23277 Ventura Boulevard
Woodland Hills, California 91364
Telephone: (818) 225-9040 Facsimile:(818) 225-9042

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| NADIA KAS, individually, and on behalf of a class of similarly situated individuals, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | CV11 1032 VBF PJWx |
| MERCEDES-BENZ USA, LLC, | |
| DEFENDANT(S). | **SUMMONS** |

TO:     DEFENDANT(S): MERCEDES-BENZ USA, LLC

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Robert L. Starr_____, whose address is _23277 Ventura Boulevard, Woodland Hills, California 91364_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: February 2, 2011                     By: _____
                                                  CHRISTOPHER POWERS
                                                  Deputy Clerk

                                                  *(Seal of the Court)*

                                                  1181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>NADIA KAS, individually, and on behalf of a class of similarly situated individuals, | DEFENDANTS<br>MERCEDES-BENZ USA, LLC, |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>THE LAW OFFICE OF ROBERT L. STARR<br>23277 Ventura Boulevard, Woodland Hills, California 91364<br>Telephone: (818) 225-9040 Facsimile: (818) 225-9042 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No   ☑ **MONEY DEMANDED IN COMPLAINT:** $ greater than $5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
USC section 1332(diversity) Class Action with causes of action for violation of California Consumer Protection statues.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 220 Foreclosure | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV11 1032

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| NADIA KAS - Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | MERCEDES-BENZ USA, LLC - Montvale, New Jersey |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date February 1, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |